Filed 5/25/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD L. THOMPSON,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>    v.<br><br>BRIANA C. IOANE,<br><br>    Defendant, Cross-complainant and Appellant. | H042104<br>(Santa Cruz County<br>Super. Ct. No. CV-179290) |
| RICHARD L. THOMPSON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL S. IOANE, Sr., et al.,<br><br>    Defendants and Appellants. | H043112<br>(Santa Cruz County<br>Super. Ct. No. CV-179290) |
| RICHARD L. THOMPSON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL S. IOANE, Sr., et al.,<br><br>    Defendants and Appellants. | H043350<br>(Santa Cruz County<br>Super. Ct. No. CV-179290) |

In this opinion, we resolve three related appeals arising out of an action to quiet title to real property located on Blue Gum Avenue in Capitola (the Blue Gum property).

James J. Thompson (Thompson)[1] brought this action against, among others, Michael S. Ioane, Sr., Shelly J. Ioane, and their adult children Briana C. Ioane, Ashley M. Ioane, and Michael S. Ioane, Jr. (collectively, the Ioanes).[2] Briana filed a cross-complaint against Thompson, asserting a number of claims, including one for quiet title to the Blue Gum property.

The trial court sustained Thompson's demurrer to Briana's cross-complaint and, later, granted summary judgment in Thompson's favor and against the Ioanes on causes of action for quiet title and declaratory relief. On Thompson's motion, the trial court found Michael and Shelly to be vexatious litigants and imposed a pre-filing order against them.

Michael, Shelly, and Briana (collectively, appellants) appealed and are proceeding in propria persona. In appeal *Thompson v. Ioane* (H042104), Briana appeals the order sustaining Thompson's demurrer to her cross-complaint. All three appellants appeal the grant of summary judgment in appeal *Thompson v. Ioane et al.* (H043112). Michael and Shelly appeal the pre-filing order in appeal *Thompson v. Ioane et al.* (H043350).

We reverse and remand with directions.

---

[1] Thompson died on July 24, 2016. On motion, this court substituted his son and successor in interest, Richard L. Thompson, as respondent. (Code Civ. Proc., § 377.31.) For simplicity and consistency, we refer to the plaintiff and respondent throughout the opinion as "Thompson."

[2] We refer to the Ioanes by their first names for purposes of clarity. We refer to Michael S. Ioane, Sr. as "Michael" and to Michael S. Ioane, Jr. as "Michael, Jr."

## I. BACKGROUND[3]

### A. *Factual Background*[4]

The Blue Gum property was sold at a foreclosure sale in August 1998.[5]

---

[3] Appellants' requests for judicial notice filed in appeal numbers H043112 and H042104 on November 10, 2016 are denied because the documents are not relevant to our resolution of the appeals. (*Jordache Enterprises*, *Inc.* *v.* *Brobeck*, *Phleger &* *Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

[4] We base our factual summary on the parties' separate statements of undisputed material facts, evidence admitted in conjunction with the motion for summary judgment, and admissions in the parties' appellate briefs. (*Mangini v.* *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1152, superseded by statute on other grounds as stated in *Rufini v.* *CitiMortgate*, *Inc.* (2014) 227 Cal. App. 4th 299 [" ' "[W]hile briefs and arguments are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party" ' "].)

With respect to the parties' separate statements, the Code of Civil Procedure requires summary judgment opposition papers to "include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed," and to include "a reference to the supporting evidence" where a fact is disputed. (Code Civ. Proc. § 437c, subd. (b)(3).) That separate statement in opposition must "unequivocally state whether [each] fact is 'disputed' or 'undisputed.' " (Cal. Rules of Court, rule 3.1350, subd. (f)(2).) Briana and Michael filed separate statements in opposition to Thompson's motion for summary judgment. Each of those separate statements failed to comply with the foregoing rules. Rather than unequivocally stating whether each material fact in Thompson's separate statement is disputed or undisputed, Michael objected to every fact on relevance grounds. We construe his separate statement as admitting all of the material facts set forth in Thompson's separate statement. (See *Carolyn v. Orange Park Community Assn.* (2009) 177 Cal.App.4th 1090, 1094 [where party opposing summary judgment failed to meet his obligation of unequivocally stating whether certain facts were disputed or undisputed, deeming those facts to be undisputed].) Briana also objected to certain facts instead of disputing them. We deem those facts to which she purported to object but did not dispute to be undisputed by her. Shelly filed no separate statement and did not join in Briana or Michael's separate statement. Accordingly, we shall consider her to have admitted all of the facts in Thompson's separate statement.

3

Thereafter, Bank United filed an unlawful detainer action against Michael in Santa Cruz Superior Court case No. MS981411. In June 1999, the court entered judgment ordering that Bank United take possession of the Blue Gum property from Michael and that a writ of possession be issued.[6]

Shelly filed for bankruptcy. She and Michael filed an adversary proceeding against Bank United and others in her bankruptcy case. In their first amended complaint, they alleged that they were the owners of the Blue Gum property, that the foreclosure sale was invalid, and that the writ of possession issued in the state unlawful detainer action was invalid. They sought possession of the Blue Gum property, among other relief. On July 10, 2000, the bankruptcy court granted summary judgment in favor of Bank United.

In approximately the same timeframe, Michael and Shelly filed a separate civil suit against Bank United and others in federal district court (case No. 99-21119 SW). They alleged they had "a paramount interest" in the Blue Gum property, that Bank United lacked any claim to the Blue Gum property, and that the writ of possession issued in the state unlawful detainer action was invalid. As in the adversary proceeding, they sought possession of the Blue Gum property. In an order filed on August 25, 2000, the federal court dismissed the action with prejudice, "easily conclud[ing] that the present litigation is just one more in a string of frivolous lawsuits filed by the Plaintiffs . . . ." The court dismissed the majority of the causes of action pursuant to the *Rooker-Feldman*

---

[5] Appellants dispute the validity of this sale, but not the fact of its occurrence. Appellants likewise dispute the validity, but not the existence, of each judgment discussed below.

[6] Thompson requested judicial notice of the judgment in connection with his summary judgment motion. While he has not identified where in the record the trial court granted that request, it is apparent the court did so as its written order granting summary judgment references the judgment and the request. The same is true of all of the court records (i.e., complaints, judicial opinions, and judgments) discussed in the factual summary.

4

doctrine[7], reasoning that those claims effectively sought federal court review of the state court's ruling in the unlawful detainer action. On September 26, 2000, the court imposed the sanction of pre-filing review on Michael and Shelly.

The Blue Gum property was deeded to Thompson and his wife in 2001.

The Ioanes filed a quiet title action against, among others, the Thompsons in Santa Cruz Superior Court case No. CV138163. On July 24, 2002, the superior court granted a motion for judgment on the pleadings filed by Thompson and his wife. The court later entered judgment in favor of the Thompsons. That judgment called for the Thompsons to recover their costs, but did not purport to quiet title in the Thompsons' favor. This court affirmed that judgment on December 19, 2003. (*Olson v. Murray* (Dec. 19, 2003, H024770) [nonpub. opn.] (*Olson*).)

The Ioanes have recorded a number of documents regarding the Blue Gum property with the Santa Cruz County Recorder since the issuance of this court's opinion in *Olson* in 2003. For example, a grant deed was recorded on February 15, 2005 purporting to transfer title to the Blue Gum property from Michael to Lesieli Tavake on behalf of his then-minor children Ashley, Briana, and Michael, Jr.

### B.    *Procedural History*

Thompson filed a verified first amended complaint on June 13, 2014 against the Ioanes and others.[8] He sought a judgment quieting title in his favor, cancellation of various written instruments, and declaratory relief.

On January 15, 2015, the court sustained a demurrer filed by Shelly, Michael, and Michael, Jr. to the cancellation of instruments cause of action with leave to amend, which

---

[7] "[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." (*Lance v. Dennis* (2006) 546 U.S. 459, 463 (per curiam) [citing *Rooker v. Fidelity Trust Co.* (1923) 263 U.S. 413, and *District of Columbia Court of Appeals v. Feldman* (1983) 460 U.S. 462.)

[8] All of the defendants other than the Ioanes defaulted.

Thompson did not. Instead, he dismissed the cancellation of instruments cause of action against Ashley and Briana.

Briana filed a cross-complaint asserting claims for quiet title, conversion, malicious prosecution, cancellation of written instrument, and declaratory relief on November 5, 2014. She sought cancellation of nine instruments, including the 2001 grant deed to the Thompsons. Thompson demurred, arguing that the quiet title, conversion, cancellation of written instrument, and declaratory relief claims were barred by res judicata (claim preclusion). He further argued that the conversion, malicious prosecution, and declaratory relief claims failed to state sufficient facts to state a cause of action.

On February 26, 2015, the court sustained Thompson's demurrer to each of Briana's causes of action without leave to amend. It ruled that the quiet title claim was barred by claim preclusion, the conversion claim failed to state sufficient facts to state a cause of action and was barred by claim preclusion, the malicious prosecution claim failed to state sufficient facts to state a cause of action, the cancellation of written instrument claim was barred by claim preclusion, and the declaratory relief claim failed to state sufficient facts to state a cause of action and was barred by claim preclusion. Brianna filed a notice of appeal on March 17, 2015.

On March 18, 2015 Thompson filed a motion for summary judgment on the grounds that claim preclusion or issue preclusion barred appellants' defenses. The trial court granted that motion in an order filed on October 21, 2015. Michael, Shelly, and Briana filed notices of appeal on December 21, 2015.

In January 2016, pursuant to a motion made by Thompson, the trial court entered a vexatious litigant prefiling order against Michael and Shelly. They appealed from that order on March 14, 2016.

The court entered judgment on March 25, 2016. It quieted title to the Blue Gum property in Thompson as of May 30, 2001. The judgment enjoined appellants "to make

6

no further claim to said Blue Gum Property adverse to plaintiff, by legal action or otherwise, on the basis of any fact or facts that were proved, or which might have been proved, in the action." The court also ordered cancellation of sixteen recorded documents. Finally, the court declared that Thompson "is the sole owner of the fee simple title of the Blue Gum Property; and that [appellants] have no legal or equitable right, title, estate, lien, or interest in the Blue Gum Property adverse to plaintiff."

## II.   DISCUSSION

### A.   *Appealability*

As a threshold matter, we note that each of appellants' three appeals was filed prematurely from a non-appealable order before judgment had been entered. While Thompson does not raise an appealability challenge, "[t]he existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1. [Citations.]" (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126-127.)

Briana appealed from the order sustaining Thompson's demurrer to her cross-complaint. But "[a]n order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a dismissal on such an order." (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.) Appellants all appealed from the order granting summary judgment to Thompson, which also was not appealable. (Code Civ. Proc., § 437c, subd. (m)(1);[9] see *Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030.) And Michael and Shelly appealed from the prefiling order, which was nonappealable. (*In re Bittaker* (1997) 55 Cal.App.4th 1004,

_____

[9] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

1008.)  Appellants should have sought review of each nonappealable order on a single appeal from the final judgment entered against them in March 2016.

The Rules of Court allow us to "treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."  (Cal. Rules of Court, rule 8.104, subd. (d)(2).)  "[S]ince an appealable judgment was later entered, the notice[s] of appeal [are] merely premature.  [Citation.]  [Therefore], 'we will liberally construe the appeal[s] to have been taken from the judgment of dismissal.'  [Citation.]"  (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1090, fn. 4.)

### B.    *Order Sustaining Demurrer (H042104)*

#### 1.    *Legal Principles*

##### a.    *Standard of Review*

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  Because a demurrer tests only the legal sufficiency of the pleading, the facts alleged in the pleading are deemed to be true.  (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 (*Berg & Berg Enterprises*).)  We do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory.  (*Ibid.*)  Nor are we "limited to plaintiff[']s theory of recovery in testing the sufficiency of [its] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory."  (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103.)

"Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.  [Citation.]  The plaintiff bears the burden of

establishing that it could have amended the complaint to cure the defect." (*Berg & Berg Enterprises*, *supra*, 178 Cal.App.4th at p. 1035.)

### b. Claim Preclusion[10]

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.) Claim preclusion also "bars claims that *could have been* raised in the first proceeding . . . ." (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1164; *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 821 ["Res judicata bars 'not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit.' "]

The court may sustain a demurrer on claim preclusion grounds "[i]f all of the facts necessary to show that the action is barred are within the complaint or subject to judicial notice . . . ." (*Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 485.)

### 2. Conversion and Malicious Prosecution Causes of Action

On appeal, Briana argues the court erred in sustaining the demurrer on claim preclusion grounds. As noted above, the court sustained the demurrer as to certain claims

---

**10** As discussed further below, the parties debate whether certain of Briana's claims are barred by "res judicata." Our high court explained in *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824 (*DKN Holdings*) that the term "res judicata" is imprecise, as it has been used "as an umbrella term encompassing both claim preclusion and issue preclusion" and as a synonym for claim preclusion. "To avoid future confusion" between the two types of preclusion, which "have different requirements," the court endorsed the use of the terms " 'claim preclusion' " and " 'issue preclusion.' " (*Id.* at p. 824.) Accordingly, we shall use those terms.

on the ground that the cross-complaint failed to state sufficient facts to state a cause of action. Briana does not address that ground. Only the quiet title and cancellation of written instrument claims were disposed of solely on claim preclusion grounds. (Thompson demurred to the claim for declaratory relief on the ground that it was wholly derivative of the other causes of action, and thus failed if they failed.) Therefore, we affirm the order sustaining the demurrer as to the conversion and malicious prosecution causes of action.

### 3. *Quiet Title Cause of Action*

Briana acknowledges that she and the other Ioanes filed an action to quiet title to the Blue Gum property against the Thompsons in case No. CV138163 more than a decade ago. At Thompson's request, the trial court took judicial notice of court records related to that quiet title action, including (1) the trial court order granting the Thompsons' motion for judgment on the pleadings, (2) the trial court judgment in favor of the Thompsons, and (3) the *Olson* decision issued by this court affirming the trial court judgment.

In view of the foregoing, Thompson contends that claim preclusion bars Briana's cross-claim seeking to quiet title to the Blue Gum property. She disagrees, attacking the validity of the 1998 foreclosure sale, the supposed basis for the judgment on the pleadings in the Thompsons' favor in case No. CV138163[11], and this court's decision affirming that judgment, which she says got the facts wrong. Briana did not raise any of these arguments below in opposition to Thompson's demurrer; as such, she forfeited them. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 (*Perez*) ["arguments raised for the first time on appeal are generally deemed forfeited"].) Moreover, as discussed below, they fail on the merits.

_____

[11] Without citation to the record, Briana asserts that the judgment hinged on the Thompsons being in privity with Bank United, which she says they were not.

10

All of the elements of claim preclusion were met, such that the trial court did not err in sustaining Thompson's demurrer to Briana's cross-claim to quiet title to the Blue Gum property. First, case No. CV138163 and Briana's cross-complaint involved identical causes of action—to quiet title to the Blue Gum property. Second, the actions involved the same parties—Briana and Thompson. Third, there was a final judgment on the merits in case No. CV138163. Briana's arguments regarding the validity of the 1998 foreclosure sale and the merits of the Thompsons' motion for judgment on the pleadings in case No. CV138163 could have been raised in the prior action. Briana notes that she "did not argue a lack of privity between Bank United and the Thompsons" on appeal from the judgment in case No. CV138163. But, for purposes of claim preclusion, that matters not. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 [claim preclusion requires that "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date"].)

Briana's challenge to this court's decision affirming the judgment in Thompson's favor in case No. CV138163 is unavailing. For purposes of claim preclusion, "an erroneous judgment is as conclusive as a correct one." (*McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 795.) Therefore, even if this court got the facts wrong, as Briana claims, the doctrine of claim preclusion applies. (*Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387, 1393 [claim preclusion bars " ' "relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided . . . ." ' "].)

To the extent Briana contends the final judgment in case No. CV138163 is void, that contention fails. " 'A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction "relates to the inherent authority of the court involved to deal with the case or matter before it." [Citation.] Lack of jurisdiction in this "fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject

11

matter or the parties." [Citation.]' " (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1100.) Briana does not suggest, let alone demonstrate, that the court rendering the earlier judgment acted without jurisdiction in the fundamental sense. Accordingly, the rule that "a *void* judgment will not operate as a bar to relitigation of the issues purportedly adjudicated" has no application. (*Ibid*.)

Briana's quiet title action fails for the independent reason that judicially noticeable facts show that her interest in the Blue Gum property depends on a void judgment, such that she cannot state a claim for quiet title. To prevail on a quiet title claim, a plaintiff must establish title to the property in dispute. (§ 761.020; *Hoeller v. Lloyd* (1959) 173 Cal.App.2d 777, 778 (*Hoeller*).) Briana's cross-complaint traces her title to a January 2003 judgment in Santa Cruz Superior Court case No. CV139431 quieting title to the Blue Gum property in Michael. In ruling on Thompson's demurrer, the trial court took judicial notice of a March 2004 order in that case setting aside the January 2003 judgment as "void ab[ ]initio as to title to" the Blue Gum property. Thus, judicially noticeable facts demonstrate that Briana cannot establish title to the Blue Gum property, as she must to state a claim for quiet title.

On appeal, Briana argues the March 2004 order is void because the judge who entered it acted in excess of his jurisdiction; she also questions the reasoning set forth in the order. She did not raise those arguments below, and thus they are forfeited. (*Perez*, *supra*, 169 Cal.App.4th at pp. 591-592.) They also fail on the merits. Where a court "acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' " (*People v.*

12

*American Contractors Indem. Co.* (2004) 33 Cal.4th 653, 661.) Briana does not assert any such unusual circumstances. Accordingly, the March 2004 order is not void or subject to attack here.

### 4. *Cancellation of Written Instruments Cause of Action*

"Under Civil Code section 3412, '[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.' To prevail on a claim to cancel an instrument, a plaintiff must prove (1) the instrument is void or voidable due to, for example, fraud; and (2) there is a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's position. [Citation.]" (*U.S. Bank National Assn. v. Naifeh* (2016) 1 Cal.App.5th 767, 778.)

Briana sought cancellation of various recorded documents including the grant deed to Thompson and other documents in his chain of title, alleging those instruments were void and "may cause serious injury to [her] by throwing a cloud on [her] title if allowed to remain uncancelled." As noted above, she purports to trace her title to a *void* judgment quieting title to the Blue Gum property in Michael. Absent any interest in the property, Briana cannot allege a reasonable apprehension that any of the instruments at issue could cause her serious injury, and thus cannot state a claim for cancellation of written instruments. Again, her challenges to the March 2004 order fail.

### 5. *Declaratory Judgment Cause of Action*

Briana sought a declaration that she is the sole owner of the Blue Gum property and that Thompson has no adverse interest in the property. The court did not err in sustaining Thompson's demurrer to Briana's claim for declaratory relief for the same reason it properly sustained the demurrer to her quiet title and cancellation of written

instruments claim—judicially noticeable facts show Briana's interest in the Blue Gum property depends on a void judgment.

### 6. *Leave to Amend*

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Briana argues she should have been granted leave to amend to investigate the orders and judgments Thompson argued precluded her claims. She contends she and the other appellants determined that the underlying judgments were void between the time the demurrer was sustained and the summary judgment motion was briefed. But, as discussed above, Briana does not point to any grounds for voiding the judgment in case No. CV138163 or the March 2004 order. Therefore, we find no abuse of discretion.

### C. *Summary Judgment Order (H043112)*

### 1. *Standard of Review*

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A plaintiff moving for summary judgment "bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.) "Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The defendant . . . shall not rely upon the allegations or denials of its

pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(1).)

"On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) "We consider 'all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) . . . .' " (*Id*. at p. 452, fn. 3.) We may affirm on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's rationale. (*Securitas Security Services USA*, *Inc*. *v*. *Superior Court* (2011) 197 Cal.App.4th 115, 120.)

### 2. *Thompson Did Not Establish His Right to Summary Judgment on His Quiet Title Cause of Action*

To prevail on a quiet title claim, a plaintiff must establish title to the property in dispute. (§ 761.020; *Hoeller*, *supra*, 173 Cal.App.2d at p. 778.) "The plaintiff may recover only upon the strength of his or her own title . . . and not upon the weakness of the defendant's title. Where the plaintiff relies on a paper title alone he must trace his title (1) to the government; or (2) to grantor in possession at the time of the conveyance to the plaintiff; or (3) to a source common to the chains of title of plaintiff and defendant." (*Ernie v. Trinity Lutheran Church* (1959) 51 Cal.2d 702, 706.)

As a plaintiff moving for summary judgment on a quiet title claim, Thompson bore the burden to make out a prima facie case of ownership. (*Miller v. Boswell* (1958) 162 Cal.App.2d 508, 511.) Thompson contends two undisputed facts establish his title: (1) Bank United obtained title by foreclosure and trustee's sale and (2) he and his wife purchased the property from Bank United. While Michael and Shelly did not properly

15

dispute those facts, Briana did.[12]  In any event, summary judgment is improper "[w]here the evidence submitted by [the] moving [party] does not support judgment in his favor . . . ." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 354.)  As such, courts have held that the opposing party's failure to file a proper separate statement as required by section 437c, subdivision (b), is grounds for summary judgment only where the moving party has met its initial burden of proof. (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086; *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 416.)  In view of the foregoing, we have no difficulty concluding that, regardless of any deficiencies in appellants' separate statements, summary judgment in Thompson's favor was proper only if he submitted evidence supporting judgment in his favor.  He did not.

The only "evidence" Thompson produced in support of his claim that he purchased the Blue Gum property from Bank United was this court's decision in *Olson*, of which the court below took judicial notice.  In the background section of that opinion, this court stated that the Thompsons "purchased the Blue Gum property from Bank United . . . ."  The trial court was not entitled to judicially notice the *truth* of that factual statement.  (See *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1566 (*Sosinsky*) ["judicial

---

[12] Thompson says the trial court excluded the evidence Briana offered to dispute those facts, such that they should be deemed undisputed by her.  Our review of the record refutes that claim. Briana disputed the facts based on a First American Title Company Title Guaranty Report and a Release of Obligation.  Respondent says those documents were excluded, citing to his "OBJECTIONS TO EXHIBITS IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT" and an order stating "Plaintiff's objections to Defendants' exhibits in support of opposition is sustained on the grounds identified in plaintiff's papers:  No. 3 (exhibit 13)."  Thompson's objections included "Objection No. 1" to the Guaranty Report, "Objection No. 2" to the Release of Obligation, and "Objection No. 3 (Exhibit 13)" to a Trustee's Deed recorded on September 16, 1997 as Document No. 1997-0042217.  We read the court's order as excluding only the September 16, 1997 Trustee's Deed, and not the Guaranty Report or Release of Obligation.

notice of the truth of 'facts' stated in an appellate opinion's statement of facts is not appropriate"].) We note that "[w]hether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully." (*Id*. at p. 1569.) But Thompson does not argue that preclusion principles bar the relitigation of the issue of what entity sold him the Blue Gum property.

Thompson's own filings in this court and the court below reveal a triable issue of fact as to his chain of title. In the operative complaint, Thompson alleged that the basis of his title to the Blue Gum property is a grant deed from grantor First Trust National Association. His separate statement asserted he purchased the property from Bank United. On appeal, Thompson claims he purchased the property from Bank United and "[a] deed conveying title . . . was delivered by First Trust National Association . . . ." He also contends that First Trust National Association "merged or changed its name to Bank United," but he does not support that contention with citation to the record. Nor does he point us to any record evidence explaining the relationship between Bank United and First Trust National Association. Accordingly, there is a triable issue of fact as to whether Thompson purchased the Blue Gum property from Bank United or First Trust National Association. That fact is material to Thompson's ability to properly trace his title.

Thompson does not appear to take the position that the prior quiet title action (case No. CV138163) established his title and is preclusive on that issue.[13] That is, he does not attempt to use issue preclusion offensively. (*Abelson v. National Union Fire*

---

[13] Instead, he relies on the preclusion doctrines to bar any defense by the Ioanes to his quiet title claim.

*Ins. Co.* (1994) 28 Cal.App.4th 776, 787 ["the offensive use of collateral estoppel . . . occurs when a plaintiff seeks to prevent a defendant from relitigating an issue determined adversely to defendant in another action against plaintiff or another party"].) Such an argument would fail. Issue preclusion "prevents relitigation of previously decided issues"—those that were "actually litigated and necessarily decided in the first suit." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.) Thompson has not shown that his title to the Blue Gum property was litigated and decided in case No. CV138163. The record establishes that, in that case, the Thompsons were granted judgment on the pleadings on the Ioanes' quiet title action and judgment was entered in their favor. That judgment called for the Ioanes to "recover nothing against" the Thompsons and for the Thompsons to recover their costs; it did not purport to quiet title in the Thompsons. Thus, the record demonstrates only that the Ioanes failed to establish title to the Blue Gum property, not that Thompson did so. Thompson contends he was "entitled to an affirmative decree quieting title in his name" merely because he prevailed against the Ioanes' quiet title claim. But that cannot be right, as both Thompson and another defendant, Washington Mutual (Bank United's successor), prevailed against the Ioanes' quiet title claim. It cannot be that they both were entitled to quiet title decrees.

For the foregoing reasons, we conclude Thompson failed to establish his own title to the Blue Gum property. Therefore, he did not meet his prima facie burden on the motion for summary judgment on the quiet title claim.

### 3. *Thompson Did Not Establish His Right to Summary Judgment on His Declaratory Judgment Cause of Action*

Thompson sought a declaration that he was the sole owner of the Blue Gum property and that appellants have no interest in it. Because there exists a triable issue of material fact as to his chain of title, he was not entitled to summary judgment on his declaratory judgment claim.

18

### D.   *Vexatious Litigant Determination and Pre-Filing Order* (*H043305*)

Michael and Shelly appeal a prefiling order issued pursuant to the vexatious litigant statute (§ 391, et seq.), which prohibits them from filing new litigation in propria persona in the California courts without first obtaining leave of court.

The vexatious litigant statute (§ 391, et seq.) was enacted " 'to curb misuse of the court system' " by " 'persistent and obsessive' litigants." (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220-221.)  Section 391, subdivision (b) defines a "vexatious litigant" as "a person who does any of the following:  [¶]  (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.  [¶]  (2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.  [¶]  (3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.  [¶]  (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." (§ 391, subd. (b).)  Section 391.7, subdivision (a) authorizes courts to enter prefiling orders prohibiting vexatious litigants "from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed."

19

The superior court found Shelly and Michael to be vexatious litigants under section 391, subdivision (b)(4), reasoning that they had previously been declared to be vexatious litigants by a federal court in a proceeding based upon the same or substantially similar facts, transaction, or occurrence "as the instant litigation." Specifically, the court relied on the September 26, 2000 order in Case No. 99-21119 SW imposing the sanction of pre-filing review on Shelly and Michael. They challenge the prefiling order on a number of grounds, including that section 391, subdivision (b)(4) should be construed as applying only to plaintiffs.

"We review questions of statutory construction de novo. [Citation.] 'Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.] We construe the statute's words in context, and harmonize statutory provisions to avoid absurd results. [Citation.] If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views. [Citation.]" (*John v. Superior Court* (2016) 63 Cal.4th 91, 95-96 (*John*).) "Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose. [Citation.] We need not follow the plain meaning of a statute when to do so would 'frustrate[ ] the manifest purposes of the legislation as a whole or [lead] to absurd results.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.)

As noted above, section 391, subdivision (b)(4) defines a "vexatious litigant" as "a person who . . . [h]as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." Section 391, subdivision (b)(4) does not indicate *what* must be "the same or substantially similar" to the basis for the prior suit,

20

and thus requires judicial construction. Courts—including the court below—have construed section 391, subdivision (b)(4) to apply where the prior proceeding was based the same or substantially similar facts, transaction, or occurrence as *the current action*. (*Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1581, disapproved on other grounds by *Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785, fn. 7.) The parties appear to agree with that construction, as do we. At issue is whether the person to be declared vexatious must be the plaintiff in the current action, as Michael and Shelly contend.

Section 391 defines "vexatious litigant" as "a person," not a plaintiff, whose litigation history contains particular behaviors (e.g., repeated attempts to relitigate (subd. (b)(2))). Thus, by its plain language, section 391, subdivision (b)(4) allows any party to an action to be declared a vexatious litigant. Under such a reading, anyone previously declared to be a vexatious litigant in another jurisdiction could be declared a vexatious litigant in California courts merely by being sued here. Such a result would be absurd and inconsistent with the statutory purpose of "curb[ing] misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.) The passive act of being sued constitutes neither a misuse of the court system, nor a waste of the time and resources of the court system and other litigants.

The foregoing is not to say that a defendant never can be declared a vexatious litigant. Section 391, subdivision (b)(3) applies to any litigant—plaintiff or defendant—who, "acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (See *John*, *supra*, 63 Cal.4th at p. 99 [appellate courts have the authority to declare a defendant appellant or writ petitioner to be a vexatious litigant in the first instance during the course of an appeal

21

from litigation the defendant or writ petitioner did not file under § 391, subd. (b)(3)].) Applying section 391, subdivision (b)(3) to both plaintiffs and defendants advances the purpose of the statute—curbing abuse of the judicial system. Likewise, applying section 391, subdivision (b)(2) to any litigant, whether plaintiff or defendant, who repeatedly litigates prior determinations is consistent with the statutory purpose. But, the same cannot be said of an equally broad construction of section 391, subdivision (b)(4), which could ensnare litigants who have ceased their vexatious ways. Accordingly, we shall reverse the prefiling order, construing section 391, subdivision (b)(4) as applying only to the plaintiff in the current action.

## III.   DISPOSITION

The judgment is reversed. On remand, the court is directed to (1) vacate its order granting summary judgment and to enter a new order denying summary judgment and (2) vacate its order declaring Michael and Shelly vexatious litigants and imposing a prefiling requirement on them. The order sustaining Thompson's demurrer to Briana's cross-complaint is affirmed. The parties are to bear their own costs on appeal.

22

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

*Thompson v. Ioane*; *Thompson v. Ioane et al.*; *Thompson v. Ioane et al.*
H042104; H043112; H043350

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: CV-179290 |
| | |
| Trial Judge: | Honorable Paul M. Marigonda |
| | |
| Counsel for Plaintiff, Cross-defendant and<br>Respondent:<br>RICHARD L. THOMPSON | Law Office of James W. Duffy<br>James William Duffy<br><br>Trombadore Gonden Law Group<br>David M. Gonden<br>James J. Corbelli |
| | |
| Counsel for Defendant, Cross-complainant and<br>Appellant:<br>BRIANA C. IOANE | In propria persona |
| | |
| Counsel for Plaintiff and Respondent:<br>RICHARD L. THOMPSON | Law Office of James W. Duffy<br>James William Duffy<br><br>Trombadore Gonden Law Group<br>David M. Gonden<br>James J. Corbelli |
| | |
| Counsel for Plaintiffs, Defendants and Appellants:<br>MICHAEL S. IOANE, Sr., et al. | In propria persona |
| | |
| Counsel for Plaintiff and Respondent:<br>RICHARD L. THOMPSON | Law Office of James W. Duffy<br>James William Duffy<br><br>Trombadore Gonden Law Group<br>David M. Gonden<br>James J. Corbelli |
| | |
| Counsel for Defendants and Appellants:<br>MICHAEL S. IOANE, Sr., et al. | In propria persona |