Filed 11/25/24  Estate of Issa CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ESTATE OF RABIHAH SHIBLI ISSA, Decedent. | B331914 |
| | (Los Angeles County Super. Ct. No. 16STPB00312) |
| SHEHADEH ISSA,<br><br>     Appellant,<br><br>     v.<br><br>HELLEN CARLSON et al.,<br><br>     Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deborah L. Christian, Judge.  Affirmed.

Willoughby & Associates, Anthony Willoughby and Anthony Willoughby, II, for Plaintiff and Appellant.

Arbella Azizian Law and Arbella Azizian for Respondents, Hellen Carlson and Christine Geisse.

Davis & Davis Law Group and Matthew Stephen Davis for Respondent, Ridgegate Escrow, Inc.

_____

In 2017, appellant Shehadeh Issa (Mr. Issa) was convicted of murdering his wife Rabihah Shibli Issa (Mrs. Issa) and their adult son. The trial court ordered Mr. Issa to pay victim restitution to Mr. Issa's surviving children.

Following sale of the Issas' residence, Mrs. Issa's estate administrator filed a petition in the probate court seeking payment of the victim restitution out of Mr. Issa's share of the sales proceeds. Mr. Issa opposed the petition, arguing he had granted his criminal defense attorney (who is also his attorney in this appeal) a lien on the residence that had priority over the victim restitution.

In a February 2, 2022 order, the probate court divided the sales proceeds equally between Mr. Issa and Mrs. Issa's estate. The court expressly declined to address the lien priority issues.

A year later, Mrs. Issa's estate administrator filed a status report indicating the escrow company could not distribute the sales proceeds without first satisfying the victim restitution liens. Following two hearings, transcripts of which are not in the appellate record, the probate court issued what it called a "nunc pro tunc" order directing the escrow company to pay the victim restitution liens with Mr. Issa's share of the sales proceeds. The order did not address Mr. Issa's counsel's lien.

On appeal, Mr. Issa contends the nunc pro tunc order was improper in that it materially altered, rather than corrected, the February 2, 2022 order, and that neither he nor his counsel received notice that the court intended to modify its earlier order.

2

Our review is impaired because we have no record of the oral proceedings at the two hearings preceding the nunc pro tunc order. We ordered the record augmented with the transcript of the first of the two hearings (the second was unreported), but Mr. Issa, represented by his attorney, the purported lienholder, declined to pay for the augmentation even though such payment is required by the California Rules of Court. Mr. Issa thus has not met his burden of providing an adequate record to evaluate his contentions.

Accordingly, we affirm.

## BACKGROUND[1]

### 1. *Murder conviction and sale of residence*

Mr. Issa was criminally charged with murdering his wife Mrs. Issa and their adult son in March 2016. Mr. Issa retained attorney Anthony Willoughby of Willoughby & Associates to defend him. According to Willoughby, Mr. Issa contractually agreed in June 2016 to grant Willoughby's firm a lien on Mr. Issa's residence in return for legal services. The contract creating the lien is not in the appellate record.

On August 22, 2016, Willoughby recorded a form entitled "Mechanics Lien" (some capitalization omitted) claiming a lien on Mr. Issa's residence, listing Willoughby's firm as "Claimant," and

---

[1] Some of the background information is taken from respondents' verified probate petition to the extent Mr. Issa does not dispute it, as reflected by his citation to and reliance on that information in his opening brief on appeal. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1186, fn. 4 [statements in appellate briefs may be construed as admissions against the party].)

3

indicating Mr. Issa owed $250,000 for legal services in relation to the criminal case. The preprinted form language stated the lien was "for labor, service, equipment, or material under Section 80000 et. Seq. of the Civil Code of the State of California, upon the premises hereinafter described . . . ."

In October 2017, a jury convicted Mr. Issa of both murders. During sentencing, the trial court ordered Mr. Issa to pay restitution to his four surviving adult children—$48,370.33 to Roger Issa, $28,539.06 to Hellen Carlson, $16,703.88 to Christine Geisse, and $25,463.29 to Victor Issa, with 10 percent interest per year from the date of sentencing. Notices of lien attaching the restitution orders were recorded on February 27, 2018. On March 23, 2018, the abstracts of judgment for restitution were recorded.

On September 28, 2018, the Issas' daughter Carlson, as personal representative of Mrs. Issa's estate, and Willoughby, who had power of attorney for Mr. Issa, agreed to a sale of the Issas' residence. The agreement noted that the parties disagreed as to how the sales proceeds should be distributed, and instructed the escrow company, after paying off certain specified costs, to retain the remainder of the proceeds pending a court order regarding their distribution.

The probate court approved the sale of the residence for $460,000 on October 1, 2018.

## 2. *Petition to determine ownership interests*

On June 22, 2021, the Issas' daughter Geisse, now the court-appointed administrator of Mrs. Issa's estate, filed a petition to determine succession to and ownership of the residence and the proceeds from its sale. Geisse contended Mrs. Issa's estate was entitled to 100 percent of the proceeds or,

4

in the alternative, 50 percent with Mr. Issa receiving 50 percent reduced by the amounts owed in victim restitution. As calculated by Geisse, the victim restitution would completely exhaust Mr. Issa's 50 percent share. Geisse argued Willoughby had no valid lien on the property, because there was no evidence of a contractual lien, and the only lien Willoughby recorded was a mechanic's lien that was unenforceable.

Mr. Issa, represented by Willoughby, filed a brief arguing Mr. and Mrs. Issa each were entitled to 50 percent of the sales proceeds. Mr. Issa argued Willoughby's lien for legal services was valid and had priority over the victim restitution liens. Mr. Issa further contended the probate court was not the proper venue to enforce the restitution orders, which were against Mr. Issa only and not the property of Mrs. Issa's estate.

On February 2, 2022, the probate court held a hearing on Geisse's petition. The court stated that it agreed with Mr. Issa's position that the court was "not involved with" determining how the liens were to be paid, and would only instruct on how the proceeds were to be divided between Mrs. Issa's estate and Mr. Issa. The court believed it did not have the power to dictate what should happen with Mr. Issa's share in terms of the liens, which would have to be dealt with in a separate action. The court stated, "I'm just determining who owns what and what should go in the estate," and "Mr. Willoughby and escrow can worry about the release of [Mr. Issa's] funds, or the payment of those liens, or whatever. That will be between them." The court noted, however, that "the criminal restitution awards, and/or attorney lien, and/or any other encumbrances would come only from Mr. Issa's share," that is, Mrs. Issa's estate was not responsible for those encumbrances. Thus, "the estate is entitled to . . . 50% of

the gross proceeds from the sale exclusive of any other debts that might be paid."

The minute order from the hearing stated Mrs. Issa's estate and Mr. Issa each were entitled to $175,504.26 plus half the interest accrued. The court ordered the escrow company to release forthwith the estate's share, which was "not subject to any judgments or liens." The court did not order the release of Mr. Issa's share—rather, the order states, "The Court makes no determination of whether these funds are subject to judgments or liens."

In a separate minute order, the court directed the personal representative to file a status report or petition for final distribution of the estate, and set an order to show cause (OSC) hearing on those matters for September 29, 2022.

### 3. *Nunc pro tunc order*

A year later, on February 3, 2023, Geisse filed a verified status report of administration seeking to continue her authority to administer Mrs. Issa's estate. In a written statement attached to the petition, Geisse averred that the escrow company could not distribute the sales proceeds until the victim restitution judgments were paid. She stated, "Despite the Probate Court ordering a distribution of the Estate[']s share of the proceeds, [the escrow company] is unable to do so without a court order handling the payment of the restitution judgments, with instructions for allocation of the proceeds." She stated Willoughby had initiated a civil action against the estate administrators, but as yet "ha[d] secured <u>no</u> viable judgment against his client for Mr. Issa's proceeds of sale, which is required by law. The victims . . . should not have to expend costs to relitigate their restitution in civil court when it was already done

6

in criminal court and recorded against the property . . . ." Geisse continued, "It is time that [the escrow company] be properly ordered to distribute the sale proceeds to the Estate . . . ."

The probate court held a hearing on February 6, 2023 at which Willoughby was present. The minute order states, "Testimony is taken," and "[t]he OSC Re Petition for Final Distribution or Status Report is continued to Wednesday, June 28, 2023 . . . in this department for status report." (Boldface omitted.) The court ordered the clerk "to give notice to Petitioner/Counsel for Petitioner."[2] The court further ordered, "Petitioner/Counsel for Petitioner is to notice all omitted parties entitled to notice." The minute order indicates a court reporter was present, but the transcript is not in the appellate record, as we discuss more fully in our Discussion, *post*.

The probate court's docket and our appellate record does not reflect any substantive filings between February 6 and June 28, 2023, and does not indicate any service of the notice the court ordered on February 6, 2023.

On June 28, the court held an unreported hearing at which Carlson, Geisse, and their attorney were present, but Willoughby was not for reasons undisclosed in the record before us. The minute order states, "The Court inquires of all parties and Counsel. [¶] The Court finds that sufficient evidence has been provided to grant the matter on calendar this date based upon the reading of the moving papers and consideration of all presented evidence. [¶] The Status Report of Personal Representative filed on 2/3/2023 by Petitioner(s) Christine Geisse

---

[2] The minute order identifies Carlson as petitioner and Geisse as "Nominee."

7

is granted with filing of notice to affected parties with right to account legend." The minute order directed the personal representative to file a status report or petition for final distribution by January 31, 2024, and set an OSC on those matters for March 11, 2024. The minute order directed Geisse's counsel to prepare the order after hearing.

The probate court entered the order after hearing on July 6, 2023. The order is entitled "Amended Order Confirming Sale of Real Property and Ownership of Funds Held in Escrow Nunc Pro Tunc." (Boldface & some capitalization omitted.) The order directed the escrow company to "complete the close of escrow . . . by causing all current and still pending judgment liens that existed as secured encumbrances," including the victim restitution liens, "be paid in exchange for full satisfaction or release of the judgment liens . . . ." The order further directed that after the encumbrances were paid, Mrs. Issa's estate should receive "one-half of the net sales proceeds, plus an equalization payment to the Estate as reimbursement of the value of the secured encumbrances paid through the sale that are attributed to Mr. Issa, personally as debtor." The funds remaining, if any, after the 50 percent distribution and equalization payment to Mrs. Issa's estate would then be distributed to Mr. Issa in care of Willoughby.

Mr. Issa timely filed a notice of appeal from the amended order. He also applied ex parte for a stay of the order pending the appeal. In the ex parte application, Mr. Issa contended he had not received notice of the June 28, 2023 hearing, nor had he confirmed or approved the order after hearing prepared by Geisse's counsel. He further contended the order was

8

substantially and improperly amended "under the guise of a *nunc pro tunc* correction."

Geisse opposed the ex parte application through a verified objection. Geisse argued the court's failure in the February 2022 order "to provide for the payment of the outstanding recorded judgment liens" prevented the escrow company from clearing title, "thus defeating the intent of the sale." Describing the June 28, 2023 hearing, Geisse stated, "[T]he court informed the parties that, on its own motion, without arguments, it had reviewed the [February 2022] order and was modifying it, correcting the deficiency in the original order." Geisse stated, "Mr. Willoughby failed to attend this hearing despite being present and on notice when the hearing was set."

The probate court denied the stay request, finding Mr. Issa had not provided proof he had actually filed his appeal, nor had he posted a bond.

4. *Augmentation of appellate record*

After review of the probate court's docket, on our own motion, we augmented the record with documents Mr. Issa did not designate, including the February 3, 2023 estate administrator's status report and the minute order from the June 28, 2023 hearing. We also ordered the record augmented with the transcript of the February 6, 2023 hearing, but Mr. Issa declined to pay the costs to prepare that transcript as required under California Rules of Court, rule 8.155(a)(1)(B).[3] Mr. Issa

---

[3] This rule allows a reviewing court to order augmentation on its own motion, and "[u]nless the court orders otherwise, the appellant is responsible for the cost of any additional transcript the court may order." (Cal. Rules of Court, rule 8.155(a)(1)(B).)

did not request a fee waiver on appeal or a waiver of fee for the transcript. We therefore informed the parties we would decide the appeal without the benefit of the February 6, 2023 transcript.

## DISCUSSION

On appeal, Mr. Issa argues the July 6, 2023 order was not a proper nunc pro tunc order because such orders may only correct clerical errors in a judgment, not alter the original judgment itself. (*Estrada v. Public Employees' Retirement System* (2023) 95 Cal.App.5th 870, 884–885.) He argues the July 6, 2023 order did not correct clerical errors, but materially altered the earlier ruling by deciding the lien issues the earlier ruling expressly declined to address. He characterizes the earlier order as a "final judgment" the probate court lacked jurisdiction to modify. He contends the probate court further erred by issuing the order without proper notice to Mr. Issa.

Mr. Issa additionally argues the July 6, 2023 order was substantively incorrect because the probate court's authority extended solely to Mrs. Issa's estate, and therefore the court could not issue an order causing Mr. Issa "to forfeit his property." To the extent the probate court could order such a forfeiture, Mr. Issa contends the court erred in prioritizing the victim restitution liens ahead of Willoughby's lien.

Mr. Issa has not provided an adequate record to support these challenges. (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1048, fn. 1 ["It is appellant['s] burden to provide an adequate record on appeal."].)

We do not have records of the oral proceedings from the February 6, 2023 and June 28, 2023 hearings, the two hearings that preceded the July 6, 2023 order. Indeed, Mr. Issa's appellate briefing does not even mention the February 6, 2023 or June 28,

10

2023 hearings, nor does it mention the estate administrator's status report raising the issue of the escrow company's inability to distribute the sales proceeds without first satisfying the restitution liens.  These omissions create the inaccurate impression that nothing of substance transpired in the case between the original February 2, 2022 order and the July 6, 2023 order.

Without records of the February 6, 2023 and June 28, 2023 hearings, we do not have a complete picture of the proceedings that led to the July 6, 2023 order, including the arguments and evidence presented to the court.  We therefore cannot determine the basis of the July 6, 2023 order, and whether it was improper, as Mr. Issa contends.  (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039 ["in the absence of a required reporter's transcript and other documents, we presume the judgment is correct"].)

Mr. Issa's position on appeal appears to be that neither he nor his counsel received notice of the June 28, 2023 hearing, and therefore that hearing and the July 6, 2023 order that followed necessarily were improper, regardless of what may have transpired at the June 28, 2023 hearing.  In this view, the appeal can be resolved in Mr. Issa's favor despite no record of the June 28, 2023 oral proceedings.  In this view, also, Mr. Issa would be absolved of his burden of providing a record of the June 28, 2023 hearing, because he purportedly had no notice of that hearing, and thus no opportunity to arrange for a court reporter.[4]

---

[4] We acknowledge Mrs. Issa's estate administrator, in opposing Mr. Issa's motion for a stay pending appeal, stated the probate court at the June 28, 2023 hearing "informed the parties that, on its own motion, without arguments, it had reviewed the

The incomplete record, however, is insufficient to support Mr. Issa's assertion that he did not receive notice. We do not know what occurred at the February 6, 2023 hearing, which was recorded and at which Mr. Issa's counsel was present. We therefore cannot determine that whatever transpired at that hearing did not put Mr. Issa or his counsel on notice of the June 28, 2023 hearing. Although the probate court at the February 6, 2023 hearing ordered the estate administrator to "notice all omitted parties entitled to notice," and the docket does not reflect service of any notice, without the transcript, Mr. Issa cannot establish he was an "omitted party" or that his counsel did not waive notice.

In short, Mr. Issa has failed to provide a sufficient record to establish 1) that he and his counsel had no notice of the June 28, 2023 hearing and 2) that the July 6, 2023 order was procedurally or substantively erroneous.

---

[February 2022] order and was modifying it, correcting the deficiency in the original order." Mr. Issa does not discuss this hearsay account of the hearing in his appellate briefing or argue it supports his position, and we therefore do not address it. (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136 [issue not raised in appellate briefing forfeited].)

## DISPOSITION

The July 6, 2023 order is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.


13